426 So.2d 1220 (1983)
Burton HANDELSMAN, Appellant,
v.
ROYAL TRUST BANK OF PALM BEACH, N.A., Appellee.
No. 82-695.
District Court of Appeal of Florida, Fourth District.
February 9, 1983.
Richard A. Kupfer of Cone, Wagner, Nugent, Johnson, Hazouri & Roth, P.A., West Palm Beach, for appellant.
Ronald Sales of Sales & Weissman, P.A., West Palm Beach, and Steel, Hector, Davis, Burns & Middleton, Palm Beach, for appellee.
DELL, Judge.
Burton Handelsman appeals from an adverse final judgment for declaratory relief in which the trial court construed a lease rental provision in favor of the appellee, Royal Trust Bank of Palm Beach, N.A.
In January of 1971, Wally F. Findlay Galleries International, Inc. (original lessor) entered into a lease agreement with the Worth Avenue National Bank (original lessor). The original lessor agreed that it would construct a building, according to plans and specifications approved by both parties, on then unimproved real property situated on Worth Avenue in Palm Beach, Florida, and would lease the ground floor and mezzanine space to the original lessee. The lease provided for a term of 20 years "commencing on the date that the tenant obtains a certificate of occupancy, which event shall occur early in the year 1971, in the absence of any unforeseen contingency... ." In addition to other provisions for payment of rent the lease contained the following language
(e) For the next ensuing one hundred twenty (120) months, a total rent of fifty thousand ($50,000) dollars per annum for the ground floor and ten ($10.00) dollars per square foot for all mezzanine space [the same annual rental as during the first half of the leased term] plus a sum equal to the increase in real property taxes payable on said premises, and plus any increase in the cost of fire and other casualty insurance required to insure lessor against the hazards covered by paragraph fourth, occurring from the beginning of the lease and throughout its term.
On October 28, 1971, the original lessor and lessee executed a memorandum agreeing *1221 that the lease commenced on October 1st, 1971 and would terminate on September 30th, 1991. In September of 1973, the parties entered into a second lease which contained essentially identical language to the original lease which was executed by the parties in January of 1971. The parties again ratified the commencement date in May of 1976. The original lessee reorganized and became known as the Royal Trust Bank of Palm Beach, N.A. (appellee). Appellee took over its predecessor's interest in the leases which are the subject of this appeal.
In October, 1979, the original lessor sold the real property to the appellant, Handelsman, and assigned all rights and obligations under the existing lease to appellant. Shortly before the sale and assignment of the leases, the appellee executed an estoppel certificate certifying the validity of the written leases and acknowledging that no modification of the leases had occurred except for the memorandum in October, 1971 which established the commencement date as October 1, 1971.
On October 1, 1981, exactly ten years or 120 months after the agreed commencement date of the lease, appellant notified appellee that it was required to pay for the increase in real estate taxes on the premises "from the beginning of the lease and throughout its term." Appellant attached a computation claiming $117,266.11 as the amount due. Appellant reached this sum by using the year 1971 as the base year. The taxes for the real property in 1971 amounted to $9,564.23, the assessed value for unimproved land. In 1972 the taxes amounted to $19,097, the assessed value of the improved property.
Appellee disagreed with appellant's computation and filed a complaint for declaratory judgment. At trial, appellant claimed entitlement to a reimbursement in the amount of $117,266.11 which represented the difference in real estate taxes from October 1, 1971 through September 30, 1981. Appellant used the assessment in 1971 as the base year for computation purposes. Appellant also claimed that the assessed valuation of the property in 1971 should continue to be used as the basis for calculating any increases in rent due to real property assessments for the period from October 1, 1981 through September 30, 1991.
The trial court found paragraph (e) of the lease ambiguous and, over appellant's objection, admitted parol evidence as to the intent of the parties. Three witnesses testified on behalf of the appellee that the parties intended that the increases should be calculated by comparing the current taxes with the first year's taxes (1972) on the completed building. Appellant presented testimony from the attorney who represented the original lessor during the negotiations leading up to the lease. He testified that he modified the original draft of the lease, to include the phrase "... occurring from the beginning of the lease and throughout its term." The trial court entered a final judgment in favor of the appellee, finding that the appellee was not obligated to pay for any increase in taxes for the first ten years of the lease and that beginning in 1982, and thereafter, the tenant must pay the difference between the real estate taxes assessed each year as compared to the year 1972, which the court chose as the base year. Appellant has appealed only from the trial court's holding that 1972 should be utilized as the base year for computation of future increases in the lease rental arising from increases in taxes and fire or other casualty insurance.
Appellant raises two points on appeal, first, the trial court should not have admitted parol evidence to explain the meaning of paragraph (e) and second, the trial court erred when it held that 1972 should be used as the base year for computation of future rent increases resulting from increases in ad valorem taxes and fire or other casualty insurance premiums.
We are inclined to agree with appellant's argument that no ambiguity exists in the language of paragraph (e) of the lease. However, our agreement does not benefit appellant because our review of the provision leads us to the conclusion that the *1222 court properly found 1972 as the base year for computation of rent increases resulting from changes in ad valorem taxes and fire insurance premiums. Paragraph (e) of the lease provides for the amount of rent which will be charged during the period October 1, 1981 through September 30, 1991 and expressly provides for an additional sum
equal to the increase in real property taxes payable on said premises, and plus any increase in the cost of fire or other casualty insurance required to insure the lessor against the hazards covered by paragraph fourth, occurring from the beginning of the lease throughout its term. (Emphasis added.)
The parties did not contract to lease a vacant parcel of real property. They contracted for the lease of a structure situated on improved real estate. Until the lessor completed the structure, no basis existed for computation of the ad valorem taxes on the demised premises. Therefore, to use the ad valorem taxes assessed on the unimproved real property in the year prior to the placement of the demised premises on the tax rolls would be inconsistent and illogical.[1] The completion of improvements on the real property was a necessary condition precedent to the assessment of the demised premises. Therefore we find no ambiguity in the terms of paragraph (e) of the lease and accordingly find that parol evidence was unnecessary to explain the meaning of its provisions. Even though the trial court may have erred in admitting the parol evidence to explain its provisions we find such error harmless since the result should have been the same without its admission.
Accordingly, the trial court's judgment is affirmed.
AFFIRMED.
DOWNEY and ANSTEAD, JJ., concur.
NOTES
[1] Section 192.042(1) provides:

Date of assessment.  All property shall be assessed according to its just value as follows:
(1) Real property, on January 1 of each year. Improvements or portions not substantially completed on January 1 shall have no value placed thereon. "Substantially completed" shall mean that the improvement or some self-sufficient unit within it can be used for the purpose for which it was constructed.